TOWNSEND AND TOWNSEND AND CREW LLP
MARC M. GORELNIK (State Bar No. 166833)
MARY L. SHAPIRO (State Bar No. 201199)
Two Embarcadero Center, Eighth Floor
San Francisco, California 94111
Telephone: (415) 576-0200
Facsimile: (415) 576-0300
Email: mmgorelnik@townsend.com
       mlshapiro@townsend.com

Attorneys for Plaintiff
WIND OF TRADE LLC

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WIND OF TRADE LLC, a Nevada limited liability company,<br><br>               Plaintiff,<br><br>               v.<br><br>MOSTAG INTERNATIONAL, INC., a Pennsylvania corporation,<br><br>               Defendant. | Case No. CV 07 6280SC<br><br>***EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES** |

**TABLE OF CONTENTS**

**Page**

I. BACKGROUND ....................................................................................................................1

    A. Wind of Trade's Extensive and Expensive Product Development and Promotion Efforts .......................................................................................................1

    B. Wind of Trade's Efforts to Distinguish its Goods in the Marketplace ......................2

    C. Defendant's Wrongful Activities ...............................................................................4

    D. Wind of Trade's Efforts to Resolve the Matter Prior to Litigation ...........................6

II. ARGUMENT ........................................................................................................................7

    A. Legal Standard for Issuance of a Temporary Restraining Order ..............................8

    B. Wind of Trade Will Prevail on The Merits ...............................................................9

    C. Likelihood of Confusion ..........................................................................................10

        1. Defendant's Use of the *Identical* Mark for *Identical* Goods Leads to Consumer Confusion ...............................................................11

        2. Defendant's Impermissible Copying of the Distinctive Design Mark Also Leads to a Likelihood of Confusion ......................................12

    D. Wind of Trade is Irreparably Harmed By Defendant's Copyist Conduct ...............12

    E. If Defendant is Willing to Cut Corners by Appropriating Wind of Trade's Trademarks and Goodwill, What Other Shortcuts Has It Taken In the Manufacture of Its Goods? ......................................................................................13

    F. Defendant's Late Changes Do Not Moot the Need for Injunctive Relief ...............14

    G. The Bond Should Not Exceed $10,000 ...................................................................14

    H. Plaintiff is Entitled to a Preliminary Injunction ......................................................15

III. CONCLUSION ..................................................................................................................15

*Wind of Trade LLC v. Mostag International, Inc.*, Case No. CV 07 6280SC
*EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION;
MEMORANDUM OF POINTS AND AUTHORITIES      i

# TABLE OF AUTHORITIES

**Page**

**Cases**

*AMF, Inc. v. Sleekcraft Boats,*
  599 F.2d 341 (9th Cir. 1979)..................................................................................... 11, 12, 13

*Century 21 Real Estate Corp. v. Sandlin,*
  846 F.2d 1175 (9th Cir. 1988)................................................................................................ 13

*Charles Schwab & Co. v. Hibernia Bank,*
  665 F. Supp. 800 (N.D. Cal. 1987)......................................................................................... 13

*DCNL Inc. v. Almar Sales Co.,*
  47 U.S.P.Q.2d 1406 (N.D. Cal. 1997), *aff'd without opinion*, 178 F.3d 1308 (9th
  Cir. 1998)................................................................................................................................ 10

*Dreamwerks Production Group, Inc. v. SKG Studio,*
  142 F.3d 1127 (9th Cir. 1998)................................................................................................ 11

*Eclipse Associates Ltd. v. Data General Corp.,*
  894 F.2d 1114 (9th Cir. 1990)................................................................................................ 12

*Fleischmann Distilling Corp. v. Maier Brewing Co.,*
  314 F.2d 149 (9th Cir. 1963).................................................................................................. 12

*GoTo.com v. Walt Disney Co.,*
  202 F.3d 1199 (9th Cir. 2000)................................................................................................ 13

*M2 Software Inc. v. Madacy Entertainment,*
  421 F.3d 1073 (9th Cir. 2005)................................................................................................ 12

*Metro Publishing, Ltd. v. San Jose Mercury News,*
  987 F.2d 637 (9th Cir.1993).................................................................................................... 9

*New West Corp. v. NYM Co., Inc.,*
  595 F.2d 1194 (9th Cir.1979).................................................................................................. 9

*Nutri/System, Inc. v. Con-Stan Indus., Inc.,*
  809 F.2d 601 (9th Cir.1987).................................................................................................... 9

*Polo Fashions, Inc. v. Dick Bruhn, Inc.,*
  793 F.2d 1132 (9th Cir. 1986)................................................................................................ 14

*Seabrook Foods, Inc. v. Bar-Well Foods, Ltd.,*
  568 F.2d 1342 (C.C.P.A. 1977).............................................................................................. 10

*Southwest Voter Registration Education Project v. Shelley,*
  344 F.3d 914 (9th Cir.2003).................................................................................................... 9

*Triad Sys. Corp. v. Southeastern Express Co.,*
  64 F.3d 1330 (9th Cir. 1995).................................................................................................. 14

*Vision Sports, Inc. v. Melville Corp.,*
  888 F.2d 609 (9th Cir.1989).................................................................................................... 9

*Wham-O, Inc. v. Paramount Pictures Corp.*,
  286 F.Supp.2d 1254 (N.D.Cal.,2003.) (Patel, J.) .................................................................. 8

**Statutes**

15 U.S.C. § 1057(b) ..................................................................................................................... 9

15 U.S.C. § 1114 .......................................................................................................................... 9

15 U.S.C. § 1116 .......................................................................................................................... 1

15 U.S.C. § 1116(d)(11) ............................................................................................................. 14

15 U.S.C. § 1125(a) ..................................................................................................................... 1

**Other Authorities**

J.T. McCarthy, *McCarthy on Trademarks and Unfair Competition*,
  § 8:13 ....................................................................................................................................... 10

J.T. McCarthy, *McCarthy on Trademarks and Unfair Competition*,
  § 17:26 ..................................................................................................................................... 10

J.T. McCarthy, *McCarthy on Trademarks and Unfair Competition*,
  § 30:11 ..................................................................................................................................... 15

J.T. McCarthy, *McCarthy on Trademarks and Unfair Competition*,
  § 30:55 ..................................................................................................................................... 16

**Rules**

Fed. R. Civ. P. 64 ......................................................................................................................... 1

Fed. R. Civ. P. 65 ......................................................................................................................... 1

Fed.R.Civ.P. 5 ............................................................................................................................ 15

L.R. 65-1 ...................................................................................................................................... 1

## MOTION FOR TEMPORARY RESTRAINING ORDER
## AND OSC RE: PRELIMINARY INJUNCTION

Plaintiff Wind of Trade LLC ("Wind of Trade"), pursuant to Fed. R. Civ. P. 64 and 65 and L.R. 65-1, as well as 15 U.S.C. §§ 1116 and 1125(a), hereby moves the Court *ex parte* for an Order temporarily restraining defendant Mostag International, Inc. (hereinafter referred to as "Defendant") from infringing Wind of Trade's 'OVE' GLOVE registered trademark and unregistered design mark and from manufacturing, selling and distributing products bearing such trademarks. This motion is based on the Memorandum of Points and Authorities herein along with the Declarations of Michael Hirsch and Mary L. Shapiro.

## MEMORANDUM OF POINTS AND AUTHORITIES

Wind of Trade's products are well known to the general public because the products are useful, well made, and exhaustively promoted on television. The 'OVE' GLOVE hot surface handler has been particularly successful for Wind of Trade. As such, the product has attracted at least one imitator. Defendant Mostag, lacking the imagination to conjure up a competing product with its own identity, simply adopted Plaintiff's trademark and design mark and set out to sell the infringing product in an overlapping trade channel. Plaintiff brings this motion in an effort to put an immediate halt to the ongoing distribution of these infringing goods of unknown quality and composition.

## I. BACKGROUND

### A. Wind of Trade's Extensive and Expensive Product Development and Promotion Efforts

Wind of Trade develops and imports utility gloves designed for handling hot surfaces, which are flame resistant and withstand temperatures up to 540 degrees Fahrenheit. Declaration of Michael Hirsch in Support of Wind of Trade's *Ex Parte* Motion for Temporary Restraining Order, ("Hirsch Decl.") Decl., ¶ 5. Through considerable efforts, Wind of Trade has established a broad network of national and local retailers throughout the United States, including nearly 40,000 outlets. Participating nationwide mass market chains include Target, Linens n' Things, and K-Mart; national drug store chains, including Walgreen's, Rite Aid, and CVS; hardware stores, including, Ace Hardware, True Value, and Do-It Best; regional grocery chains, including Ralphs, Publix, and Winn Dixie; and on the Internet, including at Amazon.com and Drugstore.com. *Id.*, ¶ 8. Since 2002, Wind of Trade has spent over $8 million dollars

on television advertising to consumers, advertising to the trade, and public relations efforts. Through this advertising, Wind of Trade creates over 1.5 billion impressions each year. *Id.*, ¶ 9.

Plaintiff's 'OVE' GLOVE product is recognized by consumers as an "AS SEEN ON TV" product and is frequently featured in retail outlets in a section identified as "AS SEEN ON TV," as well as in home and garden and house wares sections in stores and online, and on the official ASSEENONTV.COM website. *See* Hirsch Decl., ¶ 10 and Exhibit 2 thereto. There is a website featuring the 'OVE' GLOVE product at www.oveglove.com, which redirects the consumer to JEI's website at http://www.jeiusa.com/oveglove.html. The website provides detailed information about the product. *Id.*, ¶ 11 and Exhibit 3 thereto.

Since 2002, Wind of Trade has been using genuine NOMEX® and KEVLAR® materials in the design and manufacture of it products, under license from DuPont. Hirsch Decl., ¶ 18. Wind of Trade's products have undergone extensive quality testing by third parties providing consumers with assurances that the products work as advertised, that is, the gloves are heat and flame resistant up to a temperature of 540 degrees Fahrenheit. *Id.*, ¶ 19. Due to the excellent quality and superior performance of its products, Wind of Trade has sold nearly 6 million 'OVE' GLOVE branded products since December 2001, with a current suggested retail price of $14.99. *Id.*, ¶ 20.

**B. Wind of Trade's Efforts to Distinguish its Goods in the Marketplace**

At issue here are Plaintiff's 'OVE' GLOVE trademark as well as the distinctive design marks appearing on the product, all of which serve to identify the source of Plaintiff's hot surface handler. Wind of Trade first used the 'OVE' GLOVE mark in commerce at least as early as December 2001. Figure 1 shows the original 'OVE' GLOVE product. Hirsch Decl., ¶ 13 and Exhibit 4 thereto.



**Figure 1
Original 'OVE' GLOVE Product**

*Wind of Trade LLC v. Mostag International, Inc.*
*EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION;
MEMORANDUM OF POINTS AND AUTHORITIES
Case No. CV 07 6280SC

2

In 2006, Wind of Trade added silicone to the surface of the product to improve gripping capability. Wind of Trade applied the silicone in a distinctive design and adopted the design as a trademark on product packaging in order to distinguish its products in the marketplace. Figure 2 shows the 'OVE' GLOVE incorporating the Design Mark. Hirsch Decl., ¶ 13 and Exhibit 5 thereto. Wind of Trade commenced use in commerce of the Design Mark in September 2006. *Id.*, ¶ 15



**Figure 2**
**'OVE' GLOVE Product With Design Mark**

In 2007, Wind of Trade modified the design for pattern on the gloves that is used as a trademark on product packaging (the "New Design Mark"). Wind of Trade commenced use of the New Design Mark in commerce in September 2007. Figure 3 shows the 'OVE' GLOVE incorporating the New Design Mark. Hirsch Decl., ¶ 16 and Exhibit 6 thereto. The New Design Mark modifies the finger-tip design of the original Design Mark



**Figure 3**
**'OVE' GLOVE Product With New Design Mark**

The 'OVE' GLOVE trademark is the subject of U.S. Registration No. 2,683,417, issued February 4, 2003. Declaration of Mary L. Shapiro in Support of Wind of Trade's *Ex Parte* Motion for

Temporary Restraining Order ("Shapiro Decl."), ¶ 23 and <u>Exhibit</u> J thereto. The distinctive designs appearing on the gloves are the subject of U.S. Trademark Application Serial No. 77/009,941 (for the Design Mark), which the Trademark Office allowed on August 7, 2007, and U.S. Trademark Application Serial No. 77/262,146 (for the New Design Mark), filed on August 22, 2007. *Id.*, ¶¶ 24 and 25 and <u>Exhibits</u> K and L thereto.

### C. Defendant's Wrongful Activities

On November 28, 2007, Wind of Trade learned that Mostag International ("Mostag") was selling utility glove products through Amazon.com. Shapiro Decl., ¶ 3. Counsel for Wind of Trade then undertook an investigation. Through a search on Amazon.com, counsel found multiple uses of Wind of Trade's trademarks by Mostag. *Id.*, ¶ 4.

- **"New Improved Original OVE GLOVE Hot Surface Handler with Non-Slip Silicone Grip" "OVE GLOVE-Get a Grip On Hot Pots and Pans!"** *Id.* and Exhibit A thereto. See Figure 4, below.



**Figure 4**
Defendant's Advertising for "Original OVE GLOVE"

- **"OVE GLOVE-Get a Grip On Hot Pots and Pans!"** *Id.* and Exhibit B thereto. See Figure 5, below.



**Figure 5**
Defendant's Advertising for OVE GLOVE

*Wind of Trade LLC v. Mostag International, et al.*
EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION;
MEMORANDUM OF POINTS AND AUTHORITIES
Case No. CV 07 6280SC

4

- "OVE GLOVES – Nomex® Made of DuPont NOMEX & KEVALR [sic],**Withstands heat up to 540 degrees Farenheit** [sic]" *Id.* and Exhibit C thereto. See Figure 6, below.



**Figure 6**
Defendant's Advertising for "KEVALR" (sic) OVE GLOVE

- "OVE GLOVE (2 GLOVES VALUE PACK) – Extra Long Cuff Provide Extra Protection for Wrist & Arm, Nomex® -- Made of DuPont NOMEX & KEVALR [sic],**Withstands heat up to 540 degrees Farenheit** [sic]" *Id.* and Exhibit D thereto. See Figure 7, below.



**Figure 7**
Defendant's Advertising for "KEVALR" (sic) OVE GLOVE

Wind of Trade's authorized distributor Joseph Enterprises uses Amazon.com as a retail outlet for the genuine 'OVE' GLOVE hot surface handler. Hirsch Decl., ¶ 8. Shown below in Figure 8 are side-by-side images of a Joseph Enterprise's Amazon.com listing and Defendant's listing, copying word-for-word from the genuine listing. *Id.*, ¶¶ 24 and 25 and Exhibits 7 and ___ thereto.



| Genuine 'OVE' GLOVE Advertisement for "New Improved Original 'Ove' Glove Hot Surface Handler With Non-slip Silicone Grip" | Mostag OVE GLOVE Advertisement for "New Improved Original Ove Glove Hot Surface Handler With Non-slip Silicone Grip" |

**Figure 8**

The parties' respective hot surface handlers are promoted together on Amazon.com, showing that Mostag has reproduced Wind of Trade's Design Mark. Hirsch Decl., ¶ 28.

**DESIGN MARK**     **MOSTAG GLOVE**     **NEW DESIGN MARK**

  

**Figure 9**
**Defendant's Infringing Design**

**D. Wind of Trade's Efforts to Resolve the Matter Prior to Litigation**

On November 29, 2007, the day following Wind of Trade's discovery of the infringing products, counsel for Wind of Trade drafted and transmitted a demand letter to Mostag. Counsel used a facsimile number, (215) 537-1192, and address obtained from several online business information services. Counsel sent a confirmation copy by FedEx addressed to William Pan, Manager, Mostag International, 659 Adams Avenue, Philadelphia, PA 19120. Shapiro Decl., ¶ 5 and demand letter at Exhibit E.

Attempts to transmit the demand letter by facsimile revealed that the fax number was disconnected. The record at the Pennsylvania Secretary of State website indicated that the business was located at 5252 Belfield Ave., Philadelphia, PA 19144, whereas other online records indicated that the company had moved to Croydon, PA. *Id.*, ¶ 6. On November 30, 2007, Plaintiff's counsel contacted Mostag International by telephone to confirm the Croydon contact information. Counsel then sent the demand letter anew by facsimile to (215) 781-6606 and a confirmation copy followed by certified mail/return receipt to a post office box provided by a company representative, namely, P.O. Box 84, Croydon, PA 19021. *Id.*, ¶ 7. The facsimile transmission was successful. See facsimile confirmation record at Exhibit F to Shapiro Decl. Subsequently on December 5, 2007, however, the addressee refused delivery of the confirmation copy of the demand letter. *Id.*, ¶ 9 and Postal Service tracking record at Exhibit G.

Wind of Trade's demand letter requested a response by December 7, 2007, but none was received. Shapiro Decl., ¶ 20. Counsel again called Mostag International, this time in order to confirm receipt of the facsimile sent on November 30, 2007. *Id.*, ¶ 11. Counsel identified herself, stated the reason for the call, and asked to speak to William Pan, Defendant's principal. The man answering the phone declined to identify himself, but admitted receiving some faxes. Counsel stated that she was following up on the demand letter, but could not engage the man in any kind of discussion on this subject. The man eventually hung up on counsel. *Id.*, ¶¶ 12-19.

Subsequently, it appears that Defendant has modified its product listings on Amazon.com to remove "Ove Glove" from the product titles. Shapiro Decl., ¶ 21 and Exhibit H. Nevertheless, a search for "OVE' GLOVE" on the Amazon.com website displays multiple Mostag products, including those that bear Wind of Trade's Design Mark. *Id.*, ¶ 22 and Exhibit I thereto.

## II. ARGUMENT

The products at issue are intended to protect consumers from burns. The circulation of bogus products, falsely purporting to be Plaintiff's goods, may present a danger to the public and certainly damages the victimized trademark owner. Congress provided remedies in the Lanham Act of 1984. These remedies protect Plaintiff's registered and unregistered trademarks. The Lanham Act expressly provides for extraordinary preliminary relief, including issuance of *ex parte* temporary restraining orders and preliminary injunctions. No relief sought by Wind of Trade will meaningfully interfere with

1  Defendant's lawful business operations. Contemporaneous with filing, Wind of Trade has provided a
2  process server with a complete set of documents and instructions to immediate serve Defendant with the
3  Complaint, Summons, and moving papers.[1]

### A. Legal Standard for Issuance of a Temporary Restraining Order

"Like other types of preliminary injunctions, a temporary restraining order may be issued if the plaintiff has established: (1) a likelihood of success on the merits and the possibility of immediate irreparable injury, or (2) the existence of serious questions going to the merits and that the balance of hardships tips heavily in its favor." *Wham-O, Inc. v. Paramount Pictures Corp.*, 286 F.Supp.2d 1254, 1259 (N.D.Cal. 2003.) (Patel, J.), *citing, Metro Publishing, Ltd. v. San Jose Mercury News*, 987 F.2d 637, 639 (9th Cir. 1993); and *Southwest Voter Registration Education Project v. Shelley*, 344 F.3d 914, 917 (9th Cir. 2003) (en banc; per curiam). "A plaintiff will succeed on the merits of its trademark infringement claim under the Lanham Act if it establishes that the defendant's use of its mark gives rise to a 'likelihood of confusion' in the consuming public." *Metro Publishing*, 987 F.2d at 640. "A likelihood of confusion exists when consumers 'are likely to assume that a product or service is associated with a source other than its actual source because of similarities between the two sources' marks or marketing techniques.'" *Id.*, quoting, *Nutri/System, Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 604 (9th Cir. 1987). "Once the plaintiff has demonstrated a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief is not granted." *Metro Publishing*, 987 F.2d at 640, *citing, Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 612 n. 3 (9th Cir. 1989).

For the reasons set forth below, Wind of Trade presents an especially compelling case on the merits, with Defendant directly competing against Wind of Trade using Plaintiff's own marks. This in turn provides a strong presumption of irreparable injury, although Wind of Trade need not rely on this presumption given the special nature of the goods at issue. Moreover, Wind of Trade does not seek to

---

[1] Plaintiff's counsel has the following contact information for Defendant. Phone: (215) 781-8882. Facsimile: (215) 781-6606.

interfere with Defendant's business generally or to impede *fair* competition in the marketplace for heat-resistant gloves. But it is manifestly unfair – and unlawful – for Defendant to compete by confusing consumers as to the nature and source of its products.

**B. Wind of Trade Will Prevail on The Merits**

To prove trademark infringement, Plaintiff must show two basic elements: (1) a valid, protectable mark, and (2) a likelihood of confusion, mistake, or deception in the defendant's use of the trademark. 15 U.S.C. § 1114. Wind of Trade's trademark registration for 'OVE" GLOVE, Shapiro Decl., <u>Exhibit</u> J, is *prima facie* evidence of the validity of the registered trademark and Wind of Trade's exclusive rights. 15 U.S.C. § 1057(b). This statutory presumption does not attach, of course, to Wind of Trade's pending applications for registration. But it is not necessary that a trademark be registered in order for it to qualify for protection under the Lanham Act. *New West Corp. v. NYM Co., Inc.*, 595 F.2d 1194, 1198 (9th Cir.1979).

There are two pending trademark applications for the design marks appearing on the 'OVE" GLOVE hot surface handler. The Trademark Office allowed U.S. Trademark Application Serial No. 77/009,941 on August 7, 2007, which indicates successful completion of the examination process, including the finding that the mark is inherently distinctive. 15 U.S.C. § 1052 (mark must be distinctive to be registerable); *McCarthy* § 11:53 (marks examined for distinctiveness). The second design mark application, Serial No. 77/262,146, has been initially examined and found registerable, and therefore inherently distinctive. Shapiro Decl., ¶ 26. The Court need not defer to the Trademark Office's determination, however.

Designs appearing on products are protectable under the *Seabrook* test of inherent distinctiveness. *Seabrook Foods, Inc. v. Bar-Well Foods, Ltd.*, 568 F.2d 1342, 1344 (C.C.P.A. 1977).[2] *See, also*, J.T. McCarthy, *McCarthy on Trademarks and Unfair Competition* ("*McCarthy*"), § 8:13. The

---

[2] Followed in *DCNL Inc. v. Almar Sales Co.*, 47 U.S.P.Q.2d 1406 (N.D. Cal. 1997), *aff'd without opinion*, 178 F.3d 1308 (9th Cir. 1998) (design of hair brush held not inherently distinctive under the Seabrook test).

*Wind of Trade LLC v. Mostag International, Inc.*
EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. CV 07 6280SC

9

*Seabrook* factors include whether: (1) the design or shape is a common, basic shape or design; (2) it was unique or unusual in a particular field; and (3) it was a mere refinement of a commonly-adopted and well-known form of ornamentation for a particular class of goods which consumers view as mere ornamentation. "The issue is whether the trade dress is of such an unusual design that a buyer will immediately rely on it to differentiate the source of the product." *Id.*

Wind of Trade has used two successive design marks on its hot surface handling product. As discussed below, the results of the likelihood of confusion analysis is the same for either design mark, which differ only in the finger-tip design. "A mark can be modified or changed without abandonment or loss of priority if done in such a way that the continuing common element of the mark retains its impact and symbolizes a continuing commercial impression." *McCarthy*, § 17:26. Wind of Trade has continuously used, since at least September, 2006, these successive designs. The designs are distinctive and readily convey the singular source of the goods, aside from the confusion that Defendant has introduced.

Wind of Trade does *not* seek to protect the shape of its glove or the utility of adding silicone to the surface to aid in gripping. Rather, Wind of Trade seeks to bar Defendant from using the particular design that distinguishes Plaintiff's product in the marketplace. The pattern is not common. Rather, it is unique to Plaintiff's knowledge and there is nothing similar in the hot surface handler marketplace. Hirsch Decl., ¶ 14. Indeed, the distinctive pattern appears not only on the product, but on packaging and advertising. *Id.* There are innumerable alternate designs available. Functionality is not an issue because this pattern would be protectable if it were merely inert ink, with or without an overlay of clear silicone. The fact that these steps have been combined by using colored silicone does not deprive an inherently distinctive design of its distinctiveness. Accordingly, Wind of Trade's design marks are protectable even if not yet registered.

### C. Likelihood of Confusion

The Ninth Circuit has identified eight factors for consideration in determining whether a likelihood of confusion exists between two trademarks: (1) strength of the plaintiff's mark; (2) similarity of the marks; (3) proximity of the goods in question; (4) evidence of actual confusion; (5) marketing channels used by both parties; (6) types of goods and the degree of care likely to be exercised by the

purchaser; (7) defendant' intent in selecting the mark; and (8) likelihood of expansion of the parties' product lines. *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-349 (9th Cir. 1979). Each factor may not be relevant to every case, this list functions as a guide and is "neither exhaustive nor exclusive." *Id.*

### 1. Defendant's Use of the *Identical* Mark for *Identical* Goods Leads to Consumer Confusion

Defendant uses the OVE GLOVE word mark in advertising to market directly competitive goods to consumers. And this advertising appears in the same channel of trade, namely the Amazon.com website, as utilized by Wind of Trade's genuine distributor. Indeed, Plaintiff's and Defendant's goods appear side-by-side. Every applicable *Sleekcraft* factor favors Wind of Trade:

1) the registered 'OVE' GLOVE mark "is an arbitrary and fictitious mark deserving of strong protection." *Dreamwerks Production Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1130 (9th Cir. 1998);

2) Defendant has adopted the identical OVE GLOVE mark;

3) "When dealing with [this] *Sleekcraft* factor, the courts assess whether the goods are related or complementary." *M2 Software Inc. v. Madacy Entertainment*, 421 F.3d 1073, 1081-82 (9th Cir. 2005). Here the goods directly compete, so their proximity could not be closer;

4) At this early stage, there is no evidence of actual confusion. This does not weigh in Defendant's favor, however. *Sleekcraft*, 599 F.2d at 353 ("Because of the difficulty in garnering such evidence, the failure to prove instances of actual confusion is not dispositive."); *Eclipse Associates Ltd. v. Data General Corp.*, 894 F.2d 1114, 1118 (9th Cir. 1990) (the lack of evidence of actual confusion does not prevent a finding of a likelihood of confusion);

5) The parties' marketing channels overlap as the goods appear side-by-side at Amazon.com;

6) Customers may take care in selecting these safety-related products, but no amount of care can overcome Defendant's masquerade, having copied Wind of Trade's trademark and distinctive design;

*Wind of Trade LLC v. Mostag International, Inc.*
EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. CV 07 6280SC

11

7) Defendant's intent is clear: to trade on the hard work and investment of Wind of Trade in creating and bringing to market the 'OVE" GLOVE hot surface handler. In cases such as this, it is Defendant's purpose to create consumer confusion. This fact alone is sufficient to raise a presumption that confusion has or will result. *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 158 (9th Cir. 1963); and

8) The likelihood that a competitor "may expand his business to compete with the other will weigh in favor of finding that the present use is infringing." *Sleekcraft*, 599 F.2d at 354. Of course, where the products already compete head-to-head, as here, the expansion is complete.

Every applicable *Sleekcraft* factor drives the conclusion that confusion is likely. This result is not surprising inasmuch as Defendant obviously intends the confusion in order to obtain buyers for its spurious products.

### 2. Defendant's Impermissible Copying of the Distinctive Design Mark Also Leads to a Likelihood of Confusion

There is no need to reprise all of the *Sleekcraft* factors for the design mark. The only arguable distinctions are that the design mark: (1) is not yet registered; (2) may not be as strong as the coined word mark; and (3) that there are two different design marks, only one of which is identical to the design adopted by Defendant. The first quibble is not relevant since unregistered marks are protected under Section 1125(a) of the Lanham Act. As for the strength of Wind of Trade's design marks, each is arbitrary in form and therefore strong under *Sleekcraft*. Wind of Trade's first design mark has been copied completely by Defendant, just as Defendant copied the 'OVE' GLOVE word mark, so the second *Sleekcraft* factor weighs completely in Wind of Trade's favor. The second design mark remains very similar, with the only change to the finger pads. This small distinction does not save Defendant because the two designs retain similar commercial impressions.

More than a likelihood of confusion, Wind of Trade has shown inevitable confusion.

### D. Wind of Trade is Irreparably Harmed By Defendant's Copyist Conduct

In actions for trademark infringement, irreparable injury may be presumed from a showing of likelihood of success on the merits. *GoTo.com v. Walt Disney Co.*, 202 F.3d 1199, 1205 n.4 & 5 (9th

*Wind of Trade LLC v. Mostag International, Inc.*
EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. CV 07 6280SC

12

Cir. 2000). "Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988).

Beyond the presumption, there can be no doubt that Wind of Trade risks substantial risk to its reputation as a consequence of Defendant's use of Wind of Trade's marks. Plaintiff has no control over the manner of Defendant's use or, more importantly, the quality of Defendant's goods. Any problems with Defendant's goods or its actions will necessarily impugn the good name of Wind of Trade and its 'OVE' GLOVE product. Once sullied, it may well be impossible to repair Plaintiff's reputation.

### E. If Defendant is Willing to Cut Corners by Appropriating Wind of Trade's Trademarks and Goodwill, What Other Shortcuts Has It Taken In the Manufacture of Its Goods?

The balance of equities and the public interest strongly favors issuance of a temporary restraining order. "A preliminary injunction is an appropriate remedy for infringement of a registered trademark." *Charles Schwab & Co. v. Hibernia Bank*, 665 F. Supp. 800, 803 (N.D. Cal. 1987). As previously discussed, Plaintiff and its reputation are irreparably injured by the continued sale and distribution of goods bearing Plaintiff's trademarks and will continue to be injured by sales by Defendant. Any hardship endured by the Defendant as the result of the Court's issuance of an injunction is the result of its own conduct. "Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration." *Triad Sys. Corp. v. Southeastern Express Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995) (internal quotations omitted). The Defendant elected to appropriate and trade upon the Plaintiff's trademarks and goodwill and should not now be allowed to continue its illegal activities because of any perceived hardship resulting from the termination of its infringing activities.

Moreover, the right of the public to be free from the deception and misbranding resulting from the use of another's trademarks must be considered. Plaintiff has no knowledge or control over what materials Defendant uses in the manufacture of its hot surface handler product. And if Defendant is willing to cut corners by appropriating Wind of Trade's trademarks and goodwill, what other shortcuts has it taken in the manufacture of its goods? Any safety issues arising out of Defendant's goods will be damaging to both the public and Wind of Trade. The balance of the equities favors the extraordinary

relief sought by Wind of Trade.

### F. Defendant's Late Changes Do Not Moot the Need for Injunctive Relief

"Even if the defendant has ceased wrongful activities, an injunction should be granted where defendant's intentions are in doubt." *McCarthy*, § 30:11 To avoid the injunction, "the reform of the defendant must be irrefutably demonstrated and total." *Id.* "The Ninth Circuit has held that plaintiff has no burden to prove likely repetition of infringing actions. The court held that it was an abuse of discretion for a district court to refuse to grant a permanent injunction on the ground that plaintiff presented no evidence that defendant planned to repeat its acts of trademark infringement." *Id.*, *citing*, *Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135-1136 (9th Cir. 1986) ("If the defendants sincerely intend not to infringe, the injunction harms them little; if they do, it gives [plaintiff] substantial protection of its trademark.").

It should be emphasized that Defendant continues to infringe Wind of Trade's Design Mark. There has been no cessation on this point. However, in response to Wind of Trade's demand letter, Defendant has modified its use of the registered 'OVE' GLOVE trademark. Nevertheless, injunctive relief must reach the 'OVE' GLOVE trademark as well as the Design Mark. There has been no demonstration that "the reform of the defendant" is irrefutable and total, let alone sincere. Quite to the contrary. Defendant has refused to acknowledge or respond to the November 29, 2007, demand letter. Receipt is certain in view of the facsimile record and Defendant's conduct. Yet Defendant refused delivery of the confirmation copy of the demand letter. More telling, Defendant's demeanor on the December 10, 2007, telephone call – in which the recipient refused to personally identify himself and eventually hung-up on counsel – is hardly suggestive of any kind of meaningful "reform."

### G. The Bond Should Not Exceed $10,000

Plaintiff must post a bond as security against wrongful issuance of an injunction. Fed.R.Civ.P. 5.[3] "A bond should attempt to create a fund from which all of [defendant's] potential damage from an erroneous preliminary injunction can be compensated." *McCarthy*, §, 30:55. The

---

[3] The Lanham Act provides a separate remedy for wrongful seizure. 15 U.S.C. § 1116(d)(11).

*Wind of Trade LLC v. Mostag International, Inc.*
EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. CV 07 6280SC

14

size of the bond required here should relate only to Defendant' loss of profit from enjoined sales during the pendency of this case. Defendant is not enjoined from sales of products other than those using Plaintiff's marks, or variations thereof.

### H. Plaintiff is Entitled to a Preliminary Injunction

The temporary restraining order should be converted to a preliminary injunction following the requisite hearing. The violative conduct of Defendant will resume if the temporary restraining order expires without further relief. The same factors that justified the temporary restraining order justify a preliminary injunction pending trial. Wind of Trade's likelihood of success on the merits will not dissipate. Nor will the possibility of irreparable harm.

### III. CONCLUSION

An *ex parte* temporary restraining order is not only permissible under the present circumstances, but necessary in the interest of justice in order to prevent irreparable injury and further harm to plaintiff. Accordingly, it is respectfully urged that the Court enter a Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction.

Dated: December 12, 2007

Respectfully submitted,

TOWNSEND and TOWNSEND and CREW LLP

By     /s/
Marc M. Gorelnik
Mary L. Shapiro
*Attorneys for Plaintiff*
WIND OF TRADE LLC

61229916 v2

*Wind of Trade LLC v. Mostag International, Inc.*
EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. CV 07 6280SC

15